Slip Op. 07 - 124

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - - - - - - -x
CHENGDE MALLEABLE IRON GENERAL FACTORY,
                                         :
                 Plaintiff,
                                         :
         v.                                 Court No. 06-00259
                                         :
UNITED STATES,
                                         :
                 Defendant.
- - - - - - - - - - - - - - - - - - - - -x
```

Opinion

[Plaintiff's motion for judgment upon the
 agency record denied; action dismissed.]

Decided: August 10, 2007

Garvey Schubert Barer (Lizbeth R. Levinson and Ronald M. Wisla) for the plaintiff.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (Jonathan Zielinski), of counsel, for the defendant.

AQUILINO, Senior Judge: The Trade Agreements Act of 1979, as amended, 19 U.S.C. §1675(h), considers "ministerial errors" to include those in addition, subtraction, or other arithmetic function, clerical mistakes that result from inaccurate copying, duplication, or the like, and any other type of unintended lapse which the International Trade Administration, U.S. Department of Commerce ("ITA") considers

"ministerial".  Pursuant to this statute, the ITA has promulgated the following regulations, among others:

> (c) *Comments regarding ministerial errors* — . . . *In general*. . . . A party . . . to whom the Secretary has disclosed calculations performed in connection with a final determination or the final results of a[n administrative] review may submit comments concerning any ministerial error in such calculations. . . .
>
>         \*    \*    \*
>
> (e) *Corrections*.  The Secretary will analyze any comments received and, if appropriate, correct any significant ministerial error by . . . amending the final determination or the final results of review (whichever is applicable).

19 C.F.R. §351.224.

I

Plaintiff exporter Chengde Malleable Iron General Factory ("Chengde") seeks judicial relief from the ITA's <u>Malleable Iron Pipe Fittings From the People's Republic of China: Final Results of Antidumping Duty Administrative Review</u>, 71 Fed.Reg. 37,051 (June 29, 2006), as amended, 71 Fed.Reg. 45,016 (Aug. 8, 2006).  Its complaint avers that:

> 8.  On June 29, 2006, the [ITA] issued its Final Results, assigning Chengde a calculated antidumping margin of 81.64%. . . .
>
> 9.  On July 3, 2006, Chengde informed the [ITA] in writing that the company's outside translator had translated wrongly one of the key inputs in the manufacture of the subject merchandise and that a large percentage of its final antidumping duty margin of 81.64% was attributable alone to the inaccurate

>    translation. Specifically, Chengde's translator had
>    translated the name of a key input as "silicon
>    carbide" when in fact the translation should have been
>    "steel balls." The reason for the error is that the
>    Chinese words for silicon carbide and steel balls are
>    very similar, even though the commodities themselves
>    are quite different in nature. Chengde requested that
>    the [ITA] correct this error pursuant to its authority
>    under 19 C.F.R. §351.224(e) by revising its
>    calculation slightly to apply the surrogate value for
>    the correct input, steel balls.
>
>                         *    *    *
>
>    14. The [ITA] subsequently denied the request
>    that it amend the final antidumping margin applicable
>    to Chengde. Specifically, the [ITA] refused to . . .
>    correct the inadvertent translation error so as to
>    apply the surrogate value for steel balls rather than
>    the one for silicon carbide[.] . . .

That denial is set forth in the ITA's <u>2003-2004 Malleable Cast Iron Pipe Fittings from the People's Republic of China: Analysis of Ministerial Error Allegations</u>, Plaintiff's Brief, Appendix 11 (July 31, 2006), wherein the agency, at pages 3-5,

>    disagree[d] with Chengde that its translation error of
>    "silicon carbide" for one of its [factors of produc-
>    tion ("FOP")], instead of "steel balls," is a
>    ministerial error that necessitates amendment of the
>    Final Results. . . . [19 U.S.C. §1675(h)] and 19
>    C.F.R. 351.224(f) describe a ministerial error as "an
>    error in addition, subtraction, or other arithmetic
>    function, clerical error resulting from inaccurate
>    copying, duplication, or the like, and any other
>    similar type of unintentional error which the
>    Secretary considers ministerial." A translation error
>    does not fall under this definition. Moreover, the

> error in translation is not a government error, rather it is Chengde's. . . . In its ministerial allegation filing, Chengde admits that this was a mistake made by its translators.
>
> The burden is on Chengde to properly translate its filings. *See* 19 C.F.R. 351.303(e). . . . It was incumbent upon Chengde to provide proper translation of the FOP at the time of submission, and not at the ministerial error stage. Thus, this was not a ministerial error within the meaning of the Department's regulations.
>
> Moreover, Chengde's error was not apparent from the face of the calculation or the final results. . . . From Chengde's first questionnaire response, throughout the entire administrative review, which included the submission of three supplemental questionnaire responses and five factors of production databases, Chengde reported that it used silicon carbide in its production process. Thus, Chengde had multiple opportunities to correct this error prior to the Final Results.
>
> Finally, in Chengde's third and most recent supplemental questionnaire response, used by the Department in the Final Results, Chengde included a spreadsheet with suggested HTSUS numbers for each FOP. . . . For the FOP it describes as "silicon carbide" (but now claims as "steel balls"), Chengde suggests that the Department apply HTSUS 2849.20.90. . . . The description for this HTSUS code is "other carbides of silicon," and does not include steel balls. Clearly, Chengde's submission of this HTSUS field for its FOP cannot be considered a translation error. . . .
>
> These errors that Chengde made . . . do not qualify as a ministerial error . . . because it was not an error apparent from the face of the calculations or the Final Results to render it a government error. The reporting of silicon carbide by Chengde as an FOP was consistent throughout its submissions, during this administrative review, and Chengde even recommended that the Department value this input using the HTS category for silicon carbide. . . .

The ITA relied on this analysis in declining to take Chengde's request into account in the <u>Amended Final Results</u>, <u>supra</u>. Whereupon plaintiff's complaint concludes that the agency's

> refusal to correct the error in translation for a major input in the manufacture of the subject merchandise, despite a timely request to do so, was unsupported by substantial evidence on the record and otherwise not in accordance with law.

II

This matter is now before the court upon Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record, jurisdiction over which is premised upon 28 U.S.C. §§ 1581(c), 2631(c). And defendant's denial of corrective action will be upheld unless it is unsupported by substantial evidence on the record or otherwise not in accordance with law. <u>See</u> 19 U.S.C. §1516a(b)(1)(B).

A

Defendant's Response to Plaintiff's Motion for Judgment Upon the Agency Record relies upon <u>Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.</u>, 334 F.3d 1284, 1289 (Fed.Cir. 2003), <u>reh'g denied</u>, 2003 U.S. App. LEXIS 20177, wherein the ITA interpreted 19 U.S.C. §1673d(e), which contains language

identical to 19 U.S.C. §1675(h)[1], as "not including errors made by respondents", and refused to correct allegedly-erroneous data submitted by importer Kanzen during an antidumping-duty investigation. The Court of Appeals for the Federal Circuit ("CAFC") upheld the agency's statutory interpretation, concluding that congressional use of the term "ministerial" in the context of the statute "clear[ly] . . . [was] intended to cover only an error committed by Commerce itself". 334 F.3d at 1290. The CAFC found support for its conclusion in the statute's legislative history, *viz*.:

> . . . [C]ertain *final determinations contain clerical and other errors* which are not corrected, under current procedures, unless the parties to the proceedings resort to judicial review of the final determination. . . . Therefore, the Committee has adopted this provision to allow for the correction of ministerial errors *in final determinations* within a limited period after their issuance.

Id., quoting H.R. Rep. No. 100-40, p. 144 (1987)(emphasis added by CAFC). The CAFC noted that this passage "demonstrates that Congress provided for the correction of errors in the final determination produced by Commerce".

---

[1] Section 1673d(e) addresses correction of ministerial errors in final antidumping-duty determinations, while section 1675(h) addresses correction of such errors in final determinations of administrative reviews thereof.

Section 1675(h) of Title 19, U.S.C., shares that same legislative history. <u>See</u> 100 Cong. Rec. 10,399-400 (1987); H.R. Rep. No. 100-40, p. 143-44 (1987); Pub. L. No. 100-418, §1333, 102 Stat. 1209 (1988). And this court is required to give the language of section 1675(h) the same effect, to wit, plaintiff's error does not constitute a "ministerial error" entitling it to relief under the statute. <u>See</u>, <u>e.g.</u>, <u>Kaiyuan Group Corp. v. United States</u>, 28 CIT ___, ___, 343 F.Supp.2d 1289, 1313 (2004)(under 19 U.S.C. §1673d(e), "Commerce['s] use of Plaintiff's erroneous translation in making its determination does not convert Plaintiff's mistake into a 'ministerial' error").

B

Sometimes, however, a respondent's error is so obvious that the

> failure of Commerce to correct [it] would be arbitrary and capricious.[] In fact, when an error is apparent (or should have been apparent) from the face of the calculation or from the final determination itself and goes uncorrected, that error, in effect, becomes a government error and, hence, a "ministerial" error, and the government is required to correct it.

<u>Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.</u>, 334 F.3d at 1292-93. The plaintiff herein attempts to bring its error within the ambit of this ruling, stating that its

> error in translation should have been apparent to Commerce from the face of the documents. . . . [S]ilicon carbide cannot be used as the major input in the manufacture of malleable iron cast pipe fittings. It is as if Chengde had reported that its major input was salt or sugar. Tellingly, no other respondent in the review reported silicon carbide as a major input in the production of the subject merchandise.

Plaintiff's Brief, p. 13. It adds that,

> [w]hile [Chengde's translation] error was not apparent to the non-English[-]speaking company representatives, it should have been obvious to Commerce, an agency that has meticulously studied and observed the production of the subject merchandise over several years. . . . Chengde believes that[,] after several years of experience investigating the surrogate cost of producing malleable pipes in China, and having received responses from numerous companies, . . . Commerce should have known that silicon carbide is not, and cannot be, a major input in the production of the subject merchandise. Even more to the point, Commerce should have realized that steel, the major input into the production of malleable pipes, was absent from Chengde's reported factors of production. It is simply impossible to produce malleable pipes without a steel component. At a minimum . . . the agency should have asked Chengde to explain how it could produce malleable pipes without steel. Commerce neglected to even ask such a fundamental question.

Plaintiff's Reply Brief, pp. 2-3.

The defendant, on the other hand, points out that

> Chengde's calculated dumping margin of 81.64 percent [was] not so absurd as to alert Commerce [to its mistake]. This margin [was] lower than the 111.36 percent China-wide rate calculated for this review. . . . Further, it is common for companies, even Chinese pipe-fitting producers, to receive much higher margins than that Chengde receive [*sic*] here. See

>   <u>Certain Carbon Steel Butt-weld Pipe Fittings from Brazil, Taiwan, Japan, Thailand, and the People's Republic of China; Final Results of the Expedited Sunset Reviews of the Antidumping Duty Orders</u>, 70 Fed. Reg. 39,486 (July 8, 2005)(Chinese companies received dumping margins of 154.7, 134.79, 103.70, and 110.39 percent).

Defendant's Response, p. 12.  It takes the position that, as the ITA regulations at 19 C.F.R. §351.303(e) require that all documents submitted by a respondent be translated into English, the "carelessness" of a respondent in bearing that responsibility does not shift the burden to the agency to correct resulting errors.  <u>Id</u>. at 11.

The dispositive question that the court must answer, therefore, is whether Chengde's translation error was "*so egregious and so obvious*" that the ITA's failure to correct it undermines the interests of justice.  <u>Acciai Speciali Terni S.P.A. v. United States</u>, 25 CIT 245, 258 and 142 F.Supp.2d 969, 983-84 n. 7 (2001) (emphasis in original), quoting <u>Tehnoimportexport v. United States</u>, 15 CIT 250, 258—59, 766 F.Supp. 1169, 1178 (1991).  This has been held to be the case when the record contains patent inconsistencies, <u>see</u>, <u>e.g</u>., <u>Tehnoimportexport v. United States</u>, 15 CIT at 259-60, 766 F.Supp. at 1178-79 (respondent's data concerning weight of bearing rivet was plainly aberrational when compared to similar

models and weight of bearing's outer ring), or when calculations based upon the record lead to an absurd result, see, e.g., Koyo Seiko Co. v. United States, 14 CIT 680, 683 and 746 F.Supp. 1108, 1111 n. 4 (1990)(erroneous computer tapes led to both negative and positive dumping margins in excess of 16,000%).

The administrative record at bar does not contain either type of discrepancy. Plaintiff's 81.64 percent dumping margin is lower than the 111.36 percent China-wide rate. See 71 Fed.Reg. at 37,055. Moreover, the record contains no obvious inconsistency that might have alerted the ITA to Chengde's error. Its regular reference to "silicon carbide", including its identification thereof by reference to the compound's unique HTSUS tariff code, certainly did not give rise to any patent inconsistency that might have put the agency on notice of its mistake. Cf. World Finer Foods, Inc. v. United States, 24 CIT 541, 550 (2000)(error apparent from the agency record due to general inconsistency of database field).

Plaintiff's contention that the ITA should be charged with substantive knowledge regarding the production of malleable pipe so as to detect a mistaken factual assertion conflicts with the sound premise that respondents

>     must prepare their own data accurately.  They cannot
>     expect Commerce to be a surrogate to guarantee [that]
>     all of their submissions are correct.

<u>Sugiyama Chain Co. v. United States</u>, 16 CIT 526, 532, 797 F.Supp. 989, 995 (1992).  <u>See also</u> <u>Murata Mfg. Co. v. United States</u>, 17 CIT 259, 265, 820 F.Supp. 603, 607 (1993)("Commerce cannot reasonably be expected to know the affairs of sophisticated importing plaintiffs better than plaintiffs know such affairs themselves").  The court further notes that the identification of silicon carbide as an input in the production of the merchandise subject to the administrative review at bar was not as egregiously or obviously erroneous as plaintiff's proferred hypothetical input of "salt" or "sugar".  Rather, silicon carbide is used

>     in ferrous metallurgy.  When added to molten iron, a
>     vigorous exothermic reaction takes place; the silicon
>     carbide decomposes and the silicon and carbon appear
>     to be very active chemically[.] . . . The exothermic
>     reaction results in a hotter melt.  The effect is to
>     deoxidize and cleanse the metal and to promote
>     fluidity.  It produces a more desirable random
>     distribution of the graphite flakes and yields a more
>     machinable product.  Present practice is to add the
>     silicon carbide as briquettes to the cupola when
>     producing cast iron.  Added as granules to molten
>     steel in the ladle, it also serves to reduce the
>     number of undesirable inclusions and in many cases
>     leads to better physical properties in the product.

Encyclopedia of Chemical Technology, vol. 4, p. 129 (2d ed. 1964).  <u>See</u> <u>also</u> Oberg & Jones, Iron and Steel, p. 302 (1920):

> Silicon has a very decided effect upon the characteristics of cast iron.  The addition of silicon makes the iron softer, because it tends to separate the carbon as graphite and the hardening effect of the silicon required to do this is less than that of the combined carbon converted into free or graphitic carbon.  By varying the silicon content, the quality of the cast iron can be changed according to its intended use[.]

And the treatment of silicon sand, which respondent SLK apparently uses to line pipe molds, was a genuine issue in the administrative review at bar.  <u>See</u> <u>Issues and Decision Memorandum for the Administrative Review of the Antidumping Duty Order on Certain Malleable Iron Pipe Fittings From the People's Republic of China</u>, Record Document ("R.Doc") 144, p. 19 (June 21, 2006), adopted by the ITA in its <u>Final Results</u>, 71 Fed.Reg. at 37,051-52.

   The plaintiff had numerous opportunities to ensure that it fulfilled its duty to provide the agency with correct data.  <u>See</u>, <u>e</u>.<u>g</u>., <u>Kaiyuan Group Corp. v. United States</u>, 28 CIT at ___, 343 F.Supp.2d at 1310 (it is an interested party's responsibility to provide Commerce with "accurate, credible and verifiable" information).  The record shows that Chengde

submitted its first data to the ITA on March 31, 2005.  After several chances to correct deficiencies therein,[2] Chengde filed its fifth, and final, factors-of-production database on March 17, 2006[3].  In sum, there is no question that there was more than enough time for the company to confirm the accuracy of the factual information that it submitted to the agency.  Cf. Alloy Piping Prods., Inc. v. United States, 26 CIT 330, 351, 201 F.Supp.2d 1267, 1286 (2002); RHP Bearings v. United States, 19 CIT 133, 136, 875 F.Supp. 854, 857 (1995).  And the plaintiff

---

[2] In its Preliminary Results, the ITA noted that Chengde had been afforded "multiple opportunities" to resubmit its initial questionnaire responses correctly, which Chengde did not do.  70 Fed.Reg. 76,234, 76,239 (Dec. 23, 2005).  Chengde's revised databases provided thereafter in response to supplemental agency questionnaires contained "major inconsistencies and omissions", which led the ITA to conclude that they were "so deficient" they could not be used for the purpose of performing a preliminary antidumping duty calculation for Chengde.  Id.  Nevertheless, the agency stated its intent therein to issue "one more" supplemental questionnaire to Chengde outlining the deficiencies identified by the agency.  Id. at 76,240. See also Final Results, 71 Fed.Reg. at 37,053 ("As discussed in our Preliminary Results, we noted that we would provide Chengde . . . with an additional opportunity to cure deficiencies after the Preliminary Results").  The ITA furthermore "provided Chengde . . . with opportunities to remedy or explain deficiencies on the record" following receipt of its final supplemental responses.  Id.

[3] See R.Doc 119. See also Defendant's Response, pp. 3-5 (discussing procedural history of the administrative review).  The ITA found that this revised database "complied with almost all of the Department's instructions" and was "sufficient for the purpose of calculating a[n] [antidumping-duty] margin for Chengde."  R.Doc 144, p. 18.

bore the risk inherent in its decision not to verify its submissions. See, e.g., NSK Ltd. v. United States, 17 CIT 590, 593, 825 F.Supp. 315, 318-19 (1993).

Lastly, because Chengde delayed requesting correction until after the ITA had issued the Final Results, the requirement of administrative finality necessarily outweighed its belated concern for correctness. See Timken U.S. Corp. v. United States, 434 F.3d 1345, 1352-54 (Fed.Cir.), reh'g denied, 2006 U.S. App. LEXIS 10808, cert. denied, 127 S.Ct. 577 (2006)(distinguishing requests to correct errors at the final-result versus preliminary-result stages); Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d at 1292 ("there is a strong interest in the finality of Commerce's decisions"); Alloy Piping Prods., Inc. v. United States, 26 CIT at 351, 201 F.Supp.2d at 1286 (recognizing the "tension between finality and correct result" and denying relief where party requested correction after Final Results had issued). Thus, under these circumstances, where

> (1) the error was made by the respondent; (2) no request to correct the error was made before the final determination; and (3) there [is] no showing that the

error was apparent to Commerce (or should have been apparent) from the record or the final determination itself,[4]

the ITA was not required, as a matter of law on the record developed, to amend the <u>Final Results</u> to accommodate Chengde's own admitted error.[5]

### III

In view of the foregoing, plaintiff's motion for judgment upon the agency record must be denied and this action dismissed.  Judgment will enter accordingly.

Decided:  New York, New York
          August 10, 2007

                                        ___/s/ Thomas J. Aquilino, Jr.____
                                                Senior Judge

---

[4] <u>Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.</u>, 334 F.3d 1284, 1293 (Fed.Cir. 2003), <u>reh'g</u> <u>denied</u>, 2003 U.S. App. LEXIS 20177.

[5] Of course, the potential for such mistake is compounded when the reference(s) to the substance(s) involved in manufacture in the country of origin, as herein, are Chinese phonograms.  If the court reads the record at bar correctly, the substance that has been translated into English as "silicon carbide" is depicted on the record by 金刚砂 and pronounced *jin gang sha*, while "steel balls" or grit, *gang sha*, are 钢砂. That both references have a single symbol in common hardly ameliorates Chendge's error, as a matter of chemical (or even statistical) analysis, or of precise answers and accurate translation thereof into the language of U.S. legal proceedings.

<u>J U D G M E N T</u>

UNITED STATES COURT OF INTERNATIONAL TRADE

Thomas J. Aquilino, Jr., Senior Judge

```
- - - - - - - - - - - - - - - - - - - -x
CHENGDE MALLEABLE IRON GENERAL FACTORY,
                                        :
                Plaintiff,
                                        :
        v.                                  Court No. 06-00259
                                        :
UNITED STATES,
                                        :
                Defendant.
- - - - - - - - - - - - - - - - - - - -x
```

      This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is

      ORDERED, ADJUDGED and DECREED that plaintiff's motion for judgment on the agency record be, and it hereby is, denied; and it is further hereby

      ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

Dated:   New York, New York
         August 10, 2007

                                    ___/s/ Thomas J. Aquilino, Jr.____
                                             Senior Judge

## NOTICE OF ENTRY AND SERVICE

    This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

    Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

    Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

    Tina Potuto Kimble
    Clerk of the Court

Date: _____     By: _____
                                                                                   Deputy Clerk